# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | **WILLIAM T. HART** | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | **98 C 5177** | **DATE** | **MARCH 5, 2001** |
| **CASE TITLE** | **NATALIE JOHNSON, etc., et al. v. LEWIS PICICCO, et al.** | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for APRIL 18, 2001 at 11:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' renewed motion for judgment as a matter of law [64-1] and motion for a new trial [63-1] are granted in part and denied in part. Defendants' motion for remittitur [68-1] is denied as moot. The judgment entered on November 1, 2000 is vacated. All claims are dismissed except for plaintiff Natalie Johnson's unlawful arrest claim as to both defendants and unlawful search and false imprisonment claims as to defendant Picicco only. The punitive damages claim as against defendant Hintz is dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | **3** number of notices | |
| ✓ | Notices mailed by judge's staff. | | Document Number |
| | Notified counsel by telephone. | **MAR 0 6 2001** date docketed | |
| | Docketing to mail notices. | | **72** |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 3/5/2001 date mailed notice | |
| CW | courtroom deputy's initials | Date/time received in central Clerk's Office | MQM mailing initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

MAR 0 6 2001

NATALIE JOHNSON and TAEKO-NESHA ) 
HOLLAND, a minor, by and through )
her mother and father and next )
friends, LENANZA HOLLAND )
and TRACY HOLLAND, )
                       )
           Plaintiffs, )
                       )
    v. )    No. 98 C 5177
                       )
LEWIS PICICCO and STEVE HINTZ, )
                       )
          Defendants. )

## MEMORANDUM OPINION AND ORDER

As of April 22, 1998, plaintiff Natalie Johnson was 15 years old and an eighth grade student at Dirksen Middle School ("Dirksen") in Calumet City, Illinois. Plaintiff Taeko-Nesha Holland ("Holland")[1] is Johnson's niece. As of April 22, 1998, Holland was seven years old and in the first grade at Caroline Sibley Elementary School ("Sibley"), which is located a few blocks from Dirksen. At relevant times, defendants Lewis Picicco and Steve Hintz were Calumet City police officers. On April 22,

---

[1]The claims of Holland were actually brought in her parents' names. For the sake of simplicity, this opinion will refer to Holland as the plaintiff. Johnson's claims were initially brought by Holland's parents as Johnson's next friends. However, Johnson reached the age of majority while the case was pending.

1998, from approximately 2:45 p.m. to 3:00 p.m., Johnson was waiting outside the grounds of Sibley so that she could walk home with her niece. Johnson had a stick in her hand. Defendants arrested Johnson, allegedly for disorderly conduct. When Holland came out of school, defendants also took Holland into custody. Both girls were taken to the Calumet City police station, where Johnson was booked and both girls were searched. The girls were detained at the police station until approximately 8:15 p.m., when they were both released to Holland's parents, who were also Johnson's guardians at the time.

In October 2000, plaintiffs' claims against defendants were tried to a jury. Johnson brought federal claims of unlawful arrest, unlawful search, and excessive force and state law claims of false imprisonment and battery. Holland brought federal claims of unlawful arrest and unlawful search and state law claims of false imprisonment and assault. Both plaintiffs sought compensatory and punitive damages. A jury found for Johnson on her unlawful arrest claim against both defendants and her unlawful search and false imprisonment claims as against Picicco only. The jury found for Holland on her unlawful search and false imprisonment claims as against Picicco only. As to all other claims, the jury found for defendants. The jury awarded Johnson nominal ($1.00) compensatory damages. Holland was

awarded $2,500 compensatory damages for false imprisonment and another $2,500 compensatory damages for the unlawful search. Johnson was awarded $90,000 punitive damages as against Picicco and $10,000 as against Hintz. Holland was awarded $250,000 in punitive damages as against Picicco. (The verdict form is reproduced as an Addendum.) Presently pending are defendants' renewed motion for judgment as a matter of law and their alternative motions for a new trial or remittitur. Plaintiffs have not moved to modify the verdict.

Federal law provides the applicable standard for a Rule 50 motion for judgment as a matter of law. <u>Deimer v. Cincinnati Sub-Zero Products, Inc.</u>, 58 F.3d 341, 343 (7th Cir. 1995) (quoting <u>Mayer v. Gary Partners & Co.</u>, 29 F.3d 330, 335 (7th Cir. 1994)). The standard is whether the evidence presented, combined with all reasonable inferences permissibly drawn, is legally sufficient to support the verdict when viewed in the light most favorable to the nonmovant. Fed. R. Civ. P. 50(b); <u>Mathur v. Board of Trustees of Southern Illinois University</u>, 207 F.3d 938, 941 (7th Cir. 2000); <u>Collins v. Kibort</u>, 143 F.3d 331, 335 (7th Cir. 1998); <u>Gagan v. American Cablevision, Inc.</u>, 77 F.3d 951, 960 (7th Cir. 1996). In other words, the test is whether no rational jury could have returned a verdict for the plaintiff. <u>Mathur</u>, 207 F.3d at 941; <u>Emmel v. Coca-Cola Bottling Co. of Chicago</u>,

95 F.3d 627, 630 (7th Cir. 1996). The court may not reweigh the evidence, resolve conflicts in the testimony against plaintiffs, or override the jury's determinations as to the credibility of witnesses. Grassi v. Information Resources, Inc., 63 F.3d 596, 599 (7th Cir. 1995); Soto v. Adams Elevator Equipment Co., 941 F.2d 543, 549 (7th Cir. 1991); Anderson v. Gutschenritter, 836 F.2d 346, 348 (7th Cir. 1988). The standard is essentially the same as that for a motion for summary judgment. Klunk v. County of St. Joseph, 170 F.3d 772, 775 (7th Cir. 1999).

Federal law also sets the standard for a Rule 59 motion for a new trial. Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 435 (1996) (quoting Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 279 (1989)); Deleon v. Atia, 1999 WL 1044209 *1 (N.D. Ill. Nov. 9, 1999). A motion for a new trial may be granted if the verdict is against the clear weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party. Westchester Fire Insurance Co. v. General Star Indemnity Co., 183 F.3d 578, 582 (7th Cir. 1999) (quoting Winger v. Winger, 82 F.3d 140, 143 (7th Cir. 1996)); Harrison v. Dean Witter Reynolds, Inc., 79 F.3d 609, 613 (7th Cir.), cert. denied, 519 U.S. 825 (1996); Scaggs v. Consolidated Rail Corp., 6 F.3d 1290, 1293 (7th Cir. 1993); Northern Indiana Gun & Outdoor Show, Inc. v. Hedman,

111 F. Supp. 2d 1020, 1023 (N.D. Ind. 2000). When the amount of a damages award is a basis for a new trial, a new trial will only be granted if the award is monstrously excessive or there is no rational connection between the award and the evidence. Bruso v. United Airlines, Inc., ___ F.3d ___, 2001 WL 87635 *5 (7th Cir. Feb. 2, 2001) (quoting Gavoni v. Dobbs House, Inc., 164 F.3d 1071, 1075 (7th Cir. 1999)); Kossman v. Northeast Illinois Regional Commuter R.R. Corp., 211 F.3d 1031, 1037 (7th Cir. 2000) (quoting DeBiasio v. Illinois Central R.R., 52 F.3d 678, 686 (7th Cir. 1995), cert. denied, 516 U.S. 1157 (1996)). Where an error has been made in admitting or excluding evidence, a new trial will only be granted if the error affected the essential fairness of the trial or otherwise denied the complaining party a substantial right, the party was prejudiced, and the error was not harmless. Fed. R. Civ. P. 61; Fed. R. Evid. 103(a); Wollenburg v. Comtech Manufacturing Co., 201 F.3d 973, 977 (7th Cir. 2000); Jones v. Lincoln Electric Co., 188 F.3d 709, 725 (7th Cir. 1999), cert. denied, 529 U.S. 1067 (2000). An error is harmless unless it contributed to the verdict in a meaningful way, that is, there is a significant chance it affected the result of the trial. Lincoln Electric, 188 F.3d at 725 (quoting DeBiasio, 52 F.3d at 685).

With limited exceptions not pertinent to the issues presently raised, the parties did not object to any of the jury instructions that were given to the jury. See Tr. 346-52, 379-80. Therefore, the instructions are the law of the case. Jabat, Inc. v. Smith, 201 F.3d 852, 857 (7th Cir. 2000) (quoting Geldermann, Inc. v. Financial Management Consultants, Inc., 27 F.3d 307, 312 (7th Cir. 1994)). "Once the law of the case is settled, the parties can only argue that the jury did not properly apply the instructions to the facts." Jabat, 201 F.3d at 857.

The motion for judgment as a matter of law will be considered first. As to the federal claims, defendants contend both that the evidence was insufficient to support the claims and that they were entitled to qualified immunity. However, the Seventh Circuit recently reiterated that "once a jury has determined under the Fourth Amendment that an officer's conduct was objectively unreasonable, that conclusion necessarily resolves for immunity purposes whether a reasonable officer could have believed that his conduct was lawful." McNair v. Coffey, 234 F.3d 352, 355 (7th Cir. 2000) (quoting Frazell v. Flanigan, 102 F.3d 877, 886-87 (7th Cir. 1996)). See also Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 476-77 (7th Cir. 1997). In Humphrey v. Staszak, 148 F.3d 719, 725-26 (7th Cir.

1998), however, the Seventh Circuit distinguished _Frazell_ and held that, under the circumstances of that case, it was appropriate to separately consider qualified immunity after a jury had found for the plaintiff on a Fourth Amendment unlawful arrest claim. In _Humphrey_, the jury's verdict was otherwise being vacated because of an erroneous instruction, but the Seventh Circuit also indicates that probable cause is generally subject to independent review. 148 F.3d at 726. _McNair_ does not address _Humphrey_.

Here, there is no dispute about any jury instruction and the jury was instructed according to established law as to probable cause and disorderly conduct. It was instructed to determine whether a prudent person could have believed that an offense had been or was being committed. In the present case, it appears that the rule stated in _McNair_ should apply. In light of _Humphrey_, though, it will also be considered whether defendants had "arguable" probable cause. 148 F.3d at 725. "Arguable probable cause exists when 'a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question _could_ have reasonably believed that probable cause existed in light of well-established law.'" _Id._ (quoting _Gold v. City of Miami_, 121 F.3d 1442, 1445 (11th Cir. 1997), _cert. denied_, 525 U.S. 870 (1998)).

As to the unlawful arrest claims, the jury was instructed
that they had to find:

> (1) The plaintiff was arrested;
> (2) The defendant participated in the arrest
> of the plaintiff;
> (3) The defendant acted under color or
> authority of state or local law;
> (4) Probable cause did not exist to arrest
> the plaintiff; and
> (5) The defendant's conduct was a proximate
> cause of any damages sustained by the plaintiff.

Probable cause was defined as follows:

> "Probable cause" to arrest exists when the
> facts and circumstances within a police officer's
> knowledge, and of which the officer has
> reasonably trustworthy information, are
> sufficient to warrant a prudent person in
> believing that the person arrested had committed
> or was committing an offense. Probable cause
> requires more than bare suspicion, but need not
> be based on evidence sufficient to support a
> conviction, nor even a showing that the officer's
> belief is more likely true than false.
> The determination of probable cause is based
> on the information available to the officer or
> officers at the moment of arrest. When more than
> one officer is involved in the arrest, each
> officer is assumed to have knowledge of all the
> information available to both officers.

Since defendants contended that probable cause existed to
arrest Johnson for disorderly conduct, the following instruction
was also given.

> Defendants contend that plaintiff Natalie
> Johnson was arrested because probable cause
> existed to arrest her for disorderly conduct. At
> the time of the incident in question, an Illinois
> statute provided: "A person commits disorderly

conduct when he knowingly does any act in such
unreasonable manner as to alarm or disturb
another and to provoke a breach of the peace."
    To commit disorderly conduct, a person must
(1) act in an unreasonable manner, (2) disturb or
alarm another, and (3) threaten to provoke or
actually provoke a breach of the peace.
    The question in the present case is not
whether a plaintiff actually committed disorderly
conduct.  The question is whether, at the time of
any arrest and as to each plaintiff, probable
cause existed to believe that the plaintiff had
committed or was committing disorderly conduct.

Defendants contend that the evidence only supports that
probable cause existed to arrest Johnson for disorderly conduct.
However, in making their argument, defendants rely in part on
testimony of defendants that was contradicted by Johnson.  Since
not incredible, Johnson's testimony must be credited and any
dispute with a defendant's testimony must be resolved in
Johnson's favor.  Viewing the evidence in this manner, the facts
are as follows.

Johnson walked from Dirksen to Sibley to meet Holland and
walk her home.  Upon leaving Dirksen, Johnson saw Dirksen
students fighting so she picked up a stick and carried it with
her.  Johnson reached Sibley before the Sibley students were
released for the day.  Johnson stood on the sidewalk, off
Sibley's school grounds, swinging the stick at her side in a
nonmenacing manner and singing.  About 15 to 20 Dirksen students
were on the other side of a fence on Sibley's playground.  These

students were not fighting, but the potential existed for problems.

When Dirksen let out in the afternoon, the Calumet City Police commonly received telephone calls complaining about groups of Dirksen students. On April 22, 1998, at approximately 2:45 p.m., the Calumet City Police received a call of a fight near Dirksen School. They also received a hangup call to 911 from a pay telephone at a nearby gasoline station. Picicco and Hintz were sent to the area, each traveling alone in his own marked patrol car. Both were in uniform. Finding no fight at the stated site nor any problem at the gasoline station, the two officers patrolled the neighborhood. They cruised by Sibley and Hintz parked his car in the street adjoining where Johnson was standing with the stick. Picicco parked behind him.[2]

Johnson was still swinging the stick at her side in a nonmenacing manner.[3] No children were standing near her and the younger children in Sibley were not released from school until

---

[2]Picicco testified that a school crossing guard flagged him down, but neither of the two crossing guards who testified recalled doing that. It must be assumed that the jury rejected this testimony of Picicco.

[3]The officers testified she was swinging it in the air in a manner that could hit others, but Johnson's testimony must instead be credited.

after Johnson was arrested.[4]  The stick was 8 to 27 inches long

and up to an inch thick.[5]  According to defendants' testimony,

Hintz first rolled down his window and told Johnson to put the

stick down and then the officers approached her, continuing to

tell her to put the stick down before Picicco grabbed Johnson,

one of the officers took the stick away, and Picicco arrested

her.  Again, it must be assumed that the jury found the officers'

testimony to be noncredible and, instead, Johnson's contrary

testimony must be credited.  Johnson testified that she saw the

two police cars pull up and Picicco get out of his car.

According to Johnson, the first thing either officer said was

Picicco asking her if she understood English.  Johnson asked what

she had done and Picicco again asked her if she understood

English.  Hintz got out of his car and, before Picicco again

asked Johnson anything, Picicco pushed her against the fence, one

---

[4]Defendants both testified that a crowd was around
Johnson as she swung the stick.  Again, it must be assumed that
the jury rejected this testimony.

[5]Picicco testified that, when arresting Johnson, he
pulled the stick from her hand and dropped it to the ground,
picking it back up shortly thereafter.  Tr. 279-80.  (Johnson
testified that Hintz took the stick from her.  Tr. 203, 228,
235.)  The stick that was retained by the officers was the
27-inch stick that was Exhibit No. 2.  Tr. 280-81; 377.  Johnson
initially testified that the stick was seven to eight inches long
and that Exhibit No. 2 was not the stick she had in her hand.
Tr. 196.  On cross-examination, Johnson testified she was
uncertain whether Exhibit No. 2 was the actual stick.  Tr. 218,
234-35.

of the officers grabbed the stick, and the officers arrested her. Tr. 201-04.

Sufficient evidence existed to find the above facts. These facts do not constitute probable cause to arrest for disorderly conduct. Johnson was innocently swinging the stick at her side while also singing. No one was near enough to be hit by the stick; she was not disturbing or alarming anyone. She was not provoking any crowd, all of whom were on the other side of a fence. She did not get into an argument with the officers regarding any orders they gave her.[6] Contrary to defendants' contentions, Johnson was not disobeying the police officers who never told her to put down the stick. Instead, Picicco immediately approached her making sarcastic remarks and then arrested her. No sufficient basis existed for believing, or even "arguably" believing, that Johnson was engaging in disorderly conduct. Defendants are not entitled to judgment as a matter of law on Johnson's unlawful arrest claim.

The elements of the state law false imprisonment claim were the same as for the federal unlawful arrest claim except that the false imprisonment claim does not require proof of state

---

[6]Even if Johnson's conduct were to be characterized as argument, prior to April 1998, it was clearly established that arguing with a police officer, even in a loud manner, does not, by itself, constitute disorderly conduct. Humphrey, 148 F.3d at 727 (citing earlier Illinois cases).

action, but does require proof of willful and wanton conduct
which the instructions defined as "a course of action which shows
an actual or deliberate intention to cause harm or which, if not
intentional, shows an utter indifference to or conscious
disregard for the safety or rights of another person."  Also,
unlike the unlawful arrest claim, an essential element of the
false imprisonment claim was that the defendant's conduct
proximately caused injury and damage.  The jury was also
specifically instructed that nominal damages could not be awarded
on the state law claims.[7]

Picicco is the only defendant found liable on the false
imprisonment claim.  His approaching Johnson with sarcastic
comments and not giving her any opportunity to put the stick down
before forcibly arresting her is sufficient for a jury to find
that his conduct was willful and wanton.  Because the jury
awarded only nominal damages, arguably the requirement that there
be proximately caused injury and damages is not satisfied.  There
is, however, evidence to support that Johnson suffered injury and
damages as a proximate result of the false imprisonment.

---

[7]As to the federal unlawful arrest claim, the jury was
instructed that "any damages sustained" had to be shown to be
proximately caused by the defendant's conduct.  They were not
instructed that damages or injury was a necessary element of the
unlawful arrest claim.  Instead, they were specifically
instructed that, as to the federal claims, if no damages were
sustained, nominal damages could be awarded, as well as punitive
damages if appropriate.

Therefore, Picicco is not entitled to judgment as a matter of law on Johnson's false imprisonment claim. Whether the jury verdict against Picicco on the false imprisonment claim is inconsistent with the award of only nominal damages is a distinct issue that goes to whether a new trial should be granted; it is not a basis for granting judgment as a matter of law. See Freeman v. Chicago Park District, 189 F.3d 613, 615 (7th Cir. 1999); Thomas v. Stalter, 20 F.3d 298, 303 (7th Cir. 1994).

Plaintiffs' theory as to the unlawful search claims was that, having been arrested without probable cause, any search necessarily lacked probable cause. At least as incorporated in the jury instructions, there was no contention that any search that occurred went beyond what would be reasonable for a person who had been lawfully arrested or lawfully detained in protective custody. Thus, on the unlawful search claims, the jury was instructed that it had to find the following elements:

> (1) The plaintiff was arrested;
> (2) Probable cause did not exist to arrest the plaintiff;
> (3) During or following the arrest, the plaintiff was searched;
> (4) The defendant participated in the search of the plaintiff;
> (5) The defendant acted under color or authority of state or local law;
> (6) The defendant's conduct was a proximate cause of any damages sustained by the plaintiff.

As to Johnson's unlawful search claim, Picicco argues that a judgment in his favor should be granted for the same reasons that the unlawful arrest claim fails. As previously discussed, adequate evidence supports that the arrest was without probable cause. Judgment as a matter of law will not be granted as to Johnson's unlawful search claim against Picicco.

Holland's unlawful search claim is different. Defendants did not contend that probable cause existed to arrest Holland. Instead, they contended that no arrest occurred and, instead, Holland was taken into protective custody.[8] Without any objection from either side, Tr. 350-51, the jury was instructed:

> As used in these instructions, a person has been "arrested" when, in view of all the

---

[8]In April 1998, as well as currently, an Illinois statute provided:

> An officer of a local law enforcement agency . . . may take or retain temporary protective custody of the child without the consent of the person responsible for the child's welfare, if (1) he has reason to believe that the child cannot be cared for at home or in the custody of the person responsible for the child's welfare without endangering the child's health or safety; and (2) there is not time to apply for a court order under the Juvenile Court Act of 1987 for temporary custody of the child. The person taking or retaining a child in temporary protective custody shall immediately make every reasonable effort to notify the person responsible for the child's welfare and shall immediately notify the Department [of Children and Family Services].

325 ILCS 5/5.

> circumstances surrounding the incident, a
> reasonable person would have believed she was not
> free to leave.
> A person taken into "protected custody" is
> not under arrest or "arrested," however.

The term "protected custody" was not further defined and neither
party requested that it be defined.  Tr. 350-51.

Johnson and Picicco both testified that, after Johnson
was arrested and placed in Picicco's police car, she told Picicco
that she was at Sibley to pick up her niece and that she could
not leave Holland there.  Johnson's testimony does not contradict
Picicco's testimony that Johnson asked Picicco to bring Holland
with them.  Tr. 204, 207-08, 286.  Holland testified that a
police officer told her, "You can get in the car."  Tr. 250.
Unlike Johnson, Holland was not handcuffed while being taken to
the police station.  Unlike Johnson, Holland was not processed or
otherwise charged.  Johnson and both of Holland's parents
testified that, as of April 1998, Johnson cared for Holland after
school.  When asked why he took Holland to the police station,
Picicco testified, "For protective custody.  I am not going to
leave a seven-year-old child abandoned with no escort home,
nobody home once she gets there, and I am not going to leave her
there."  Tr. 287.  The evidence only supports that Holland was
taken into protective custody, not arrested.  Since being

arrested was an essential element of the unlawful search claim, Picicco is entitled to judgment as a matter of law on Holland's unlawful search claim. For the same reason, Picicco is also entitled to judgment as a matter of law on Holland's false imprisonment claim. Therefore, the judgment in favor of Holland will be vacated and a judgment will instead be entered in Picicco's favor as to Holland's claims.

Still to be considered is whether there is adequate proof to support punitive damages liability in Johnson's favor. As to punitive damages on the federal claims,[9] the jury was instructed:

> The function of punitive damages is to punish a defendant for malicious conduct and to deter similar conduct by others.
> As regards the constitutional claims, whether you decide to award any punitive damages should be based on whether you find that a defendant (a) acted wantonly and willfully, (b) acted with reckless, callous, or deliberate indifference to the plaintiff's constitutional rights, or (c) was motivated in his actions by ill will, malice, or a desire to injure the plaintiff.

---

[9]Any punitive damages awarded to Johnson must be based on the federal claims since the jury was instructed that punitive damages could not be awarded based on a state law claim if the plaintiff was entitled to only nominal compensatory damages. However, as discussed below, the jury's verdict against Picicco on Johnson's false imprisonment claim was inconsistent with its award of nominal compensatory damages. In any event, as to the state law claims, the jury was instructed that punitive damages required a finding of willful and wanton conduct, which also satisfies the requirement for punitive damages on the federal claim.

Punitive damages may be awarded even if the violation of a plaintiff's constitutional rights resulted in only nominal compensatory damages.

As previously discussed, there was sufficient evidence for the jury to find that Picicco's conduct was willful and wanton. Therefore, evidence supported awarding Johnson punitive damages as against Picicco.

It must be separately considered whether the evidence supports awarding punitive damages as against Hintz. Unlike Picicco, Hintz did not directly touch Johnson during the arrest. Neither does Johnson contend that Hintz said anything during the arrest. Johnson's testimony only supports that Hintz walked behind Picicco and that Hintz grabbed the stick from Johnson's hand. Of course, the evidence also supports that Hintz acted imprudently by participating in Johnson's arrest, in that no prudent person could have believed Johnson had been or was committing a crime. The state of mind required to prove an unlawful arrest, though, is not the same as the state of mind necessary for punitive damages. Iacobucci v. Boulter, 193 F.3d 14, 26 (1st Cir. 1999). The evidence before the jury was insufficient to conclude that Hintz acted with utter indifference to Johnson's right to be free from an unlawful arrest, nor does it support that Hintz acted recklessly or callously, or with deliberate indifference, ill will, malice, or a desire to injure

Johnson. Johnson's punitive damages award as against Hintz will be vacated because not supported by sufficient evidence.

Next to be considered is the motion for a new trial. Although judgment as a matter of law is being granted as to Holland's claims, it must also be stated whether a new trial would be granted in the event that today's ruling as to judgment as a matter of law is reversed on appeal. Fed. R. Civ. P. 50(c). If judgment as a matter of law had not been granted, a new trial would have been granted as to Holland's claims against Picicco because the verdicts as to Holland and Picicco are inconsistent.

The proper remedy for inconsistent verdicts is a new trial. Freeman, 189 F.3d at 615. However, "jury verdicts must be interpreted so as to avoid inconsistency whenever possible: 'Where there is a view of the case that makes the jury's answers to the special interrogatories consistent, they must be resolved that way.'" Id. (quoting Gallick v. Baltimore & Ohio R. Co., 372 U.S. 108, 119 (1963)). If the verdict on a particular claim is not supported by adequate evidence, then it does not matter that it is inconsistent with the verdict on other claims. American Casualty Co. of Reading, Pa. v. B. Cianciolo, Inc., 987 F.2d 1302, 1305-06 (7th Cir. 1993).

Here, if judgment as a matter of law had not been granted, the verdict for Picicco on Holland's unlawful arrest claim would have to be found to be inconsistent with the verdict

for Picicco on the false imprisonment claim. As previously set forth, three of the four essential elements of the unlawful arrest claim were also elements of the false imprisonment claim. The only additional element of the unlawful arrest claim is the state action element, which the parties stipulated was satisfied. Therefore, the finding of liability on the false imprisonment claim cannot be reconciled with the finding for Picicco on the unlawful arrest claim. If judgment as a matter of law were not granted, Picicco would have been entitled to a new trial on Holland's claims against him.

Defendants also contend that the verdicts as to Johnson's claims are inconsistent. As previously discussed, proximately caused injury or damages was not an essential element for liability on the unlawful arrest and unlawful search claims, whereas proximately caused injury and damages were essential elements of the false imprisonment claim. The finding of liability on the false imprisonment claim necessarily included a finding that the arrest of Johnson proximately caused injury and damages. The award of nominal unlawful arrest/false imprisonment damages, though, is to the contrary. The finding of liability on the false imprisonment claim while awarding nothing more than nominal damages for that claim is irreconcilably inconsistent. Thomas, 20 F.3d at 303; Rosario v. Livaditis, 963 F.2d 1013, 1021 (7th Cir. 1992), cert. denied, 506 U.S. 1051 (1993). The finding

of liability on the false imprisonment claim is also inconsistent with awarding only nominal damages for the unlawful arrest claim, since that claim was based on the exact same conduct. Also, there is no distinction between Picicco and Hintz as to any damages caused by the unlawful arrest.[10] The award of nominal damages for the unlawful search is not inconsistent because different conduct goes to the question of damages for that claim.

Under some circumstances, an inconsistency like the present one requires a retrial of damages only. See, e.g., Rosario, 963 F.2d at 1022. Other circumstances require the retrial of both damages and liability. See, e.g., Thomas, 20 F.3d at 303-04. Here, it cannot be assumed that the jury found some damages, yet failed to include them on the verdict form. Substantial factual disputes exist as to both damages and liability. Cf. id. Moreover, although Johnson does not move for a new trial, it cannot be ignored that finding liability on Johnson's unlawful arrest and false imprisonment claims, but finding only nominal compensatory damages is against the clear weight of the evidence. It is clear that Johnson was emotionally upset both at the scene of the arrest and while in custody at the

---

[10]Any possible legal or factual distinction as to the two defendants' damages liability as to the unlawful arrest count is waived in that the jury instructions provided for joint and several liability as to each claim, making no distinction as to each defendant's separate damages liability as to each type of compensatory damages for which both were held liable.

police station. If the arrest was without probable cause, Johnson necessarily suffered at least some proximately caused compensatory damages. Therefore, a new trial will be granted as to liability and damages for both Johnson's unlawful arrest claim (as to both Picicco and Hintz)[11] and her false imprisonment claim (as to Picicco only).

Because there was no separate punitive damages award based solely on Johnson's unlawful search claim, punitive damages as to that claim (as against Picicco only) necessarily must be retried as well. It still must be considered whether liability and compensatory damages as to Johnson's unlawful search claim against Picicco should be retried. The award of nominal damages for the unlawful search claim is not necessarily against the clear weight of the evidence. A reasonable jury could not have found that Johnson suffered no emotional damages as a result of the search conducted at the police station. However, it could have found that neither Picicco nor Hintz was a participant in the search at the police station which was conducted by a different officer. Or, as to the search at the police station, the jury may have found for defendants on their affirmative

_____

[11]Since judgment as a matter of law has been granted as to Hintz's liability for punitive damages, only liability and compensatory damages will be retried as to Hintz. In accordance with Rule 50(c), it is noted that, if Hintz had not been granted judgment as a matter of law, a new trial would have been granted as to punitive damages as well.

defense that it was justified by safety concerns. Instead, the
jury may have found Picicco liable for only the quick pat-down
search he conducted at the scene. It would not have been against
the clear weight of the evidence to find that that search caused
only nominal damages. However, in light of the other
inconsistent verdicts and the jury's apparent problems in
deciding liability and damages, it is appropriate to grant a new
trial on liability and compensatory damages for the unlawful
search claim, as well.

As to all claims on which liability was found, either
judgment as a matter of law or a new trial is being granted.
Therefore, it is unnecessary to consider other grounds for a new
trial that are raised by defendants and also unnecessary to
determine whether the punitive damages were excessive. However,
it is appropriate to comment on two evidentiary issues as they
are likely to arise again at a new trial.

Defendants object to plaintiffs' references to race
during the trial. Although plaintiffs did not base any claim on
race discrimination, they contended that their treatment occurred
because they were African-American. Had they adequately proven
that race motivated defendants, it would have been an appropriate
consideration in determining whether adequate grounds existed for
awarding punitive damages and may also have been relevant to
judging the credibility of the witnesses. See Price v. Kramer,

200 F.3d 1237, 1251 (9th Cir.), cert. denied, 121 S. Ct. 54
(2000).  The evidence at trial, however, was insufficient to
support that the arrests were motivated by race.  There was no
evidence that non-African-American students were treated more
favorably, no evidence of any racial comments during any of the
events, and no evidence that defendants had discriminated against
other African-Americans.  Therefore, during a new trial, Johnson
shall not make any reference to race, unless as a necessary
component of testimony regarding the identity of a particular
person.

Defendants also object to Johnson being permitted to
present evidence that the disorderly conduct charges were not
prosecuted.  Absent privity or the identity of parties necessary
for collateral estoppel, a person's acquittal is not admissible
evidence against a police officer either to show that the person
did not commit the underlying offense or to show that probable
cause did not exist.  Daubach v. Wnek, 2001 WL 58948 *3 (N.D.
Ill. Jan. 18, 2001).  Here, the charges against Johnson were not
tried to a judgment and the evidence presented at trial supported
that the decision to drop charges was made by prosecutors, not
the defendants in the present case.  At trial, after plaintiffs
elicited a minimal amount of testimony regarding the charges not
being prosecuted, Tr. 173, defendants presented substantially
more developed testimony about the charges being dropped and

police processing of the charges.   Tr. 190-91, 268-70, 313-14.
See also Tr. 299-301 (plaintiffs' cross examination of Picicco).
At the new trial, Johnson will be prohibited from presenting
evidence in her case-in-chief that the charges against her were
not prosecuted.   However, if defendants present or elicit
testimony that disorderly conduct charges (a petition for
adjudication of wardship) were filed by the police officers or if
defendants otherwise imply that Johnson was found guilty of
disorderly conduct, Johnson may present evidence that prosecutors
decided not to pursue the charges.   Cf. Wnek, 2001 WL 58948 at
*4.

    In summary, all claims remain dismissed or are presently
dismissed except that a new trial will be held as to plaintiff
Johnson's unlawful arrest claim against both defendants,
plaintiff Johnson's unlawful search claim against defendant
Picicco only, and plaintiff Johnson's false imprisonment claim
against defendant Picicco only.   As to defendant Hintz, plaintiff
Johnson will be limited to pursuing compensatory damages.   As to
defendant Picicco, plaintiff Johnson may seek both compensatory
and punitive damages.   All claims of plaintiff Holland are
dismissed.   No partial judgment will be entered at this time.
See Fed. R. Civ. P. 54(b).

    By March 16, 2001, plaintiffs shall serve defendants with
a written demand for settlement.   Defendants shall respond by no

later than March 26, 2001. A status hearing is set for April 4, 2001 at 11:00 a.m. at which time the parties will report as to the likelihood of settlement.

IT IS THEREFORE ORDERED that defendants' renewed motion for judgment as a matter of law [64-1] and motion for a new trial [63-1] are granted in part and denied in part. Defendants' motion for remittitur [68-1] is denied as moot. The judgment entered on November 1, 2000 is vacated. All claims are dismissed except for plaintiff Natalie Johnson's unlawful arrest claim as to both defendants and unlawful search and false imprisonment claims as to defendant Picicco only. The punitive damages claim as against defendant Hintz is dismissed. Status hearing set for April 4, 2001 at 11:00 a.m.

ENTER:

_William T. Hart_
UNITED STATES DISTRICT JUDGE

DATED: MARCH 5, 2001

# **ADDENDUM**

## **V E R D I C T   F O R M**

We, the jury, find as follows with regard to the claims by plaintiff Natalie Johnson and Taeko-Nesha Holland against defendants Lewis Picicco and Steve Hintz:

### **I.   Liability**

(Place an "X" on the appropriate line
for each claim and defendant)

#### **A.   Natalie Johnson's Claims**

(1) With respect to Natalie Johnson's Unlawful Arrest claim:

| As to defendant: | For Plaintiff | Against Plaintiff |
|---|---|---|
| Lewis Picicco | X | |
| Steve Hintz | X | |

(2) With respect to Natalie Johnson's Unlawful Search claim:

| As to defendant: | For Plaintiff | Against Plaintiff |
|---|---|---|
| Lewis Picicco | X | |
| Steve Hintz | | X |

(3) With respect Natalie Johnson's Excessive Force claim:

| As to defendant: | For Plaintiff | Against Plaintiff |
|---|---|---|
| Lewis Picicco | | X |
| Steve Hintz | | X |

(4) With respect to Natalie Johnson's False Imprisonment claim:

| As to defendant: | For Plaintiff | Against Plaintiff |
|---|---|---|
| Lewis Picicco | X | |
| Steve Hintz | | X |

(5) With respect to Natalie Johnson's Battery claim:

| As to defendant: | For Plaintiff | Against Plaintiff |
|---|---|---|
| Lewis Picicco | | X |
| Steve Hintz | | X |

## B.  Taeko-Nesha Holland's Claims

(1) With respect to Taeko-Nesha Holland's Unlawful Arrest claim:

| As to defendant: | For Plaintiff | Against Plaintiff |
|---|---|---|
| Lewis Picicco | | X |
| Steve Hintz | | X |

(2) With respect to Taeko-Nesha Holland's Unlawful Search claim:

| As to defendant: | For Plaintiff | Against Plaintiff |
|---|---|---|
| Lewis Picicco | X | |
| Steve Hintz | | X |

(3) With respect to Taeko-Nesha Holland's False
Imprisonment claim:

| As to defendant: | For Plaintiff | Against Plaintiff |
|---|---|---|
| Lewis Picicco | X | |
| Steve Hintz | | X |

(4) With respect to Taeko-Nesha Holland's Assault claim:

| As to defendant: | For Plaintiff | Against Plaintiff |
|---|---|---|
| Lewis Picicco | | X |
| Steve Hintz | | X |

## II.  Compensatory Damages

## A.  Natalie Johnson's Compensatory Damages

If you find for plaintiff Natalie Johnson and against any
of the defendants, fill in the amount of each type of
compensatory damages plaintiff Natalie Johnson is awarded.  If
you find for both defendants as to a particular type of claim,
fill in the number zero (0).

Plaintiff Natalie Johnson is awarded compensatory
damages in the following amounts:

| | |
|---|---|
| Unlawful Arrest/False Imprisonment Damages | $ 1.00 |
| Unlawful Search Damages | $ 1.00 |
| Excessive Force/Battery Damages | $ 0.00 |

## B. Taeko-Nesha Holland's Compensatory Damages

If you find for plaintiff Taeko-Nèshà Holland and against any of the defendants, fill in the amount of each type of compensatory damages plaintiff Natalie Johnson is awarded. If you find for both defendants as to a particular type of claim, fill in the number zero (0).

Plaintiff Taeko-Nesha Holland is awarded compensatory damages in the following amounts:

Unlawful Arrest/False Imprisonment Damages $ 2,500

Unlawful Search Damages $ 2,500

Assault Damages $ 0.00

## III. Punitive Damages

## A. Natalie Johnson's Punitive Damages

Do you award plaintiff Natalie Johnson punitive damages and, if so, in what amount? For each defendant, either (1) put an "X" on the YES line and fill in the amount or (2) put an "X" on the NO line.

| As to defendant: | YES | AMOUNT | NO |
|---|---|---|---|
| Lewis Picicco | X | $ 90,000 | |
| Steve Hintz | X | $ 10,000 | |

## B. Taeko-Nesha Holland's Punitive Damages

Do you award plaintiff Taeko-Nesha Holland punitive damages and, if so, in what amount? For each defendant, either (1) put an "X" on the YES line and fill in the amount or (2) put an "X" on the NO line.

| As to defendant: | YES | AMOUNT | NO |
|---|---|---|---|
| Lewis Picicco | X | $ 250,000 | |
| Steve Hintz | | $ | X |